UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

ANGELA T. MARTINEZ                           CIVIL ACTION NO. 05-2241

versus                                                    JUDGE WALTER
                                                          **REFERRED TO:**
COMMISSIONER OF THE SOCIAL         **MAGISTRATE JUDGE HORNSBY**
SECURITY ADMINISTRATION

**MEMORANDUM RULING**

**Introduction**

Angela Martinez ("Plaintiff") applied for disability benefits. She complains primarily of knee pain and depression. Plaintiff, who has a high school education and work experience that includes employment as a meat wrapper, clerk and housekeeper, was 39 years old when ALJ Earl W. Crump denied her claim.

The ALJ evaluated the claim under the familiar five-step process. He found that Plaintiff was not engaged in substantial gainful activity (step one) and that she had degenerative joint disease and pain in the left knee that were severe impairments (step two) within the meaning of the regulations. The ALJ found that Plaintiff did not have a severe impairment based on depression or other mental health issue. He also found that the severe impairments did not meet or equal a listed impairment (step three) that would require a finding of disabled without regard to the applicant's age, education or vocational factors.

The ALJ then conducted a thorough analysis of the medical records and testimony. He concluded that Plaintiff had the residual functional capacity ("RFC") to perform a significant, but not full, range of sedentary work. He found that Plaintiff was precluded from

prolonged standing/walking (not to exceed two hours in an 8-hour work day) and that she could only occasionally climb, balance, stoop, kneel, crouch or crawl. He added that Plaintiff would require a hand-held assistive device for prolonged ambulation.

A vocational expert ("VE") testified that a person with Plaintiff's RFC and other relevant factors could not perform any of Plaintiff's past relevant work (step four). The ALJ then asked whether Plaintiff was capable of performing the demands of other jobs that exist in significant numbers in the economy (step five). The VE identified the jobs of addresser, document preparer (microfilm) and tube operator. Based on that testimony, and using Medical-Vocational Rule 201.28 as a framework for decisionmaking, the ALJ found that Plaintiff was not disabled within the meaning of the regulations.

The Appeals Council denied a request for review. Plaintiff then filed this civil action seeking the limited judicial relief that is available pursuant to 42 U.S.C. § 405(g). Both parties filed written consent to have a magistrate judge decide the case and, pursuant to 28 U.S.C. § 636(c) and the standing order of the district court governing social security cases, the action was referred to the undersigned for decision and entry of judgment. For the reasons that follow, the Commissioner's decision to deny benefits will be affirmed.

**Issues on Appeal**

Plaintiff generally contests whether there was substantial evidence to support the ALJ's decision. She also disputes the ultimate finding that there are jobs available in significant numbers that she could maintain.

**Standard of Review; Substantial Evidence**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla and less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Mental Health**

Plaintiff disagrees with the ALJ's decision that Plaintiff does not have a severe impairment related to her mental health. Dr. Samuel Thomas, a licensed psychologist, conducted a consultative examination. Plaintiff reported that she had experienced depressive symptoms since injuring her knee, but she showed no formal signs of a thought disorder. Her communication and socialization skills were adequate, and her intellectual functioning was in the low average range. Dr. Thomas concluded: "Assessment data do not indicate that emotional or mental problems would prevent [Plaintiff] from working at this time in a normal work setting." He did recommend that Plaintiff participate in individual therapy to discuss issues related to depression. Tr. 301-05. The ALJ considered that report and analyzed the asserted impairment under the technique required by the regulations. He concluded, after

applying the appropriate definition of severe impairment found in Stone v. Heckler, that the impairment was not severe.

Plaintiff does not agree with that conclusion, but she has not pointed to objective reports or other evidence that would so undermine Dr. Thomas's report and the ALJ's conclusion that the decision would be deprived of substantial evidence. The record contains relevant evidence that a reasonable mind might accept as adequate to support the ALJ's conclusion, so this issue does not warrant relief.

**RFC and Pain**

Plaintiff complains generally of the ALJ's assessment of her RFC. It should first be noted that the RFC does not suggest that Plaintiff has a great deal of ability. Rather, the ALJ found that Plaintiff is extremely limited in her ability to perform work activity.

The ALJ looked to reports from several physicians. Dr. John Sandifer, an orthopedic surgeon, examined Plaintiff in April 2003. He reported that Plaintiff had sustained a twisting injury to her left knee in 1999. She had been under the care of a number of orthopedic physicians since then, but she had never had surgery. Plaintiff reported that she used a cane most of the time and was taking Celebrex for inflammation. Dr. Sandifer observed marked tenderness along the joint, but the knee appeared to be completely stable to stress testing. He diagnosed chronic strain with possible partial anterior cruciate tear and possible internal derangement of the left knee. He opined that Plaintiff could probably do a job that was

sedentary in nature with limited standing and walking, such as two hours per day, but that she would need to elevate her leg frequently. Tr. 375.[1]

Dr. Robert Holladay, an orthopedic physician, conducted a consultative examination in October 2003. He reported a history of different physicians' opinions. One orthopedic surgeon recommended surgery. Another surgeon who was asked for a second opinion recommended against surgery; he believed that Plaintiff's physical complaints were out of proportion to the clinical examination and MRI findings. Yet another physician was consulted, and he felt that Plaintiff could return to work and had no indications for surgical treatment. Two other physicians were unable to find anything that would qualify Plaintiff for an impairment rating.

Dr. Holladay conducted a physical examination and diagnosed left knee pain. His examination showed "no evidence of objective findings to suggest meniscal injury or problems with the left knee." He added that a cane was "not a necessary requirement" and that Plaintiff was "capable of standing, walking or sitting for 6 out of 8 hours out [of] a usual workday." He did believe that Plaintiff should avoid climbing steps, stairs or ladders on a frequent basis. Tr. 308-10.

---

[1] Only the first page of Dr. Sandifer's report appears at the cited page of the transcript. Some of the information cited above is taken from the ALJ's decision, which summarized Dr. Sandifer's report. Neither party has contested the accuracy of the ALJ's description of the report.

Dr. Phillip Osborne found that Plaintiff could do sedentary or even light work, rating Plaintiff with a 0% impairment. He did note, however, that Plaintiff had a marked elevation in her heart rate after only 12 steps on a step test, plus very poor recovery. Dr. Osborne said that gave credence to Plaintiff's complaint of pain. Tr.365-67.

Plaintiff testified at her most recent hearing that she does not drive unless she has to get her son to school, which is only about two miles away. She said difficulty sitting prevented her from driving any more than that. She said she did not require any assistance with her personal needs, but "when I first get up I usually fall because my leg is stiff." She does not do any housework, but she "sometimes" fixes a simple meal and does "very little" shopping for the family. She said her appetite was "not too good because I don't hardly eat," but she also testified that she had gained more than 30 pounds in the last three years.

Plaintiff reported trouble sleeping because of pain in her leg. She said it "hurts like, sometimes like they drive like a knife through it, it hurts." She said she had pain even when seated that was sometimes as bad as when she was on her feet. None of the many physicians she has seen have been able to relieve the pain. Plaintiff said she takes Demerol, but only when she can't stand the pain, which is about once a week. She tries to avoid taking the drug (to prevent addiction). She said she does not take any over-the-counter medication. Plaintiff testified that she could not walk without her cane and that she needs it to stand up. She claimed that she could, even with a cane, walk no more than 50 or 60 yards at a time or stand for more than 30 or 35 minutes. She did believe that she could stand 2 or 3 hours total in a

work day, but she estimated that she could sit for an hour or two at a time. Plaintiff was asked if she could perform a job that would allow her to sit most of the day with short breaks and only required her to use her hands to work with lighter objects. Plaintiff said she could not do even that undemanding job because she would "get aggravated." Tr. 518-46.

Plaintiff urges that the ALJ should have found her complaints of pain and the extent of her limitations to be credible. Plaintiff's testimony and much of the objective medical evidence, particularly Dr. Holladay's report, are squarely at odds. The ALJ examined that medical evidence at length, reviewed Plaintiff's activities of daily living, noted the lack of need for regular pain medication and the absence of stigmata usually associated with severe pain, and observed that Dr. Holladay had reported evidence of substantial symptom magnification or exaggeration during the examination. Even then, the ALJ deemed Plaintiff's testimony to be partially credible. The principal testimony that he rejected was Plaintiff's description of her ability to sit and the need to elevate her leg. The RFC otherwise reflected that Plaintiff had a serious limitation with respect to her knee. Tr. 22-26.

An ALJ's findings on credibility of the claimant and the debilitating effect of subjective symptoms, based on his first-hand observation of the claimant, are particularly within his province and entitled to judicial deference. Johnson v. Bowen, 864 F.2d 340, 347 (5th Cir. 1988); Falco v. Shalala, 27 F.3d 160, 164 (5th Cir. 1994). The ALJ was well within his discretion to find Plaintiff only partially credible in the face of consistent,

objective medical evidence that was contrary to the testimony. The ALJ also gave good reasons for that assessment. No judicial relief is warranted.

**Step Five Burden**

Plaintiff makes a general argument that the ALJ did not satisfy the step five burden of showing that there are jobs available in significant numbers that Plaintiff could perform and maintain. The ALJ relied upon both the Medical-Vocational Rules (as a framework for decisionmaking) and the VE's identification of available jobs. That is sufficient to meet the Commissioner's step five burden. Fraga v. Bowen, 810 F.2d 1296, 1304 (5th Cir. 1987).

Plaintiff's argument about maintaining an available job invokes the Fifth Circuit's Singletary decision, which interpreted disability under the Act to apply to cases in which a person is capable of working for short periods but can not *maintain* a job because his impairment flares up too often. Singletary does not, however, require every decision by an ALJ include a separate finding regarding the claimant's ability to maintain a job. Frank v. Barnhart, 326 F.3d 618, 621 (5th Cir. 2003). An ALJ's finding that a claimant can perform a certain level of work necessarily includes a finding that he is able to perform at that level not just intermittently but eight hours a day, five days a week. A separate and express finding regarding maintaining work is required only when the claimant's ailment "waxes and wanes in its manifestation of disabling symptoms." Id. See also Dunbar v. Barnhart, 330 F.3d 670 (5th Cir. 2003). The ALJ's basic decision with respect to disability was upheld above, and

there is no indication in this record that a separate finding with regard to maintaining employment was required.

**Conclusion**

Plaintiff's arguments on appeal do not survive judicial review. A judgment will be entered affirming the Commissioner's decision.

THUS DONE AND SIGNED at Shreveport, Louisiana, this 12th day of March, 2007.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE